UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JAMES H. LEBLANC, JR.

CIVIL ACTION

VERSUS

NUMBER 07-606-RET-SCR

GREATER BATON ROUGE
PORT COMMISSION, ET AL

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, September 21, 2009.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JAMES H. LEBLANC, JR.

CIVIL ACTION

VERSUS

NUMBER 07-606-RET-SCR

GREATER BATON ROUGE
PORT COMMISSION, ET AL

## MAGISTRATE JUDGE'S REPORT

Before the court is the Defendant's Motion for Summary Judgment filed by defendant the Port of Greater Baton Rouge. Record document number 27.  The motion is opposed.[1]

Based on the applicable law and an analysis of the competent summary judgment evidence, for the reasons which follow the defendant's motion for summary judgment cannot be granted.

## Background and the Parties' Arguments[2]

Plaintiff began his employment with the defendant in January 1985 as the Assistant Director of Operations and held this position until 2004.  In August 2004 the plaintiff's supervisor retired and the plaintiff was promoted to Director of Operations 1, and the Assistant Director position vacated by the plaintiff was not

---

[1] Record document number 28.  Defendant also filed a reply memorandum.  Record document number 33.

[2] The summary of background information is composed of undisputed facts taken in large part from the common exhibits that each side submitted.  It does not contain all the relevant facts that are a part of the summary judgment record.

filled.   At the time the plaintiff took over as Director of Operations, the Maintenance Department, which had previously been in the Department of Engineering, was a part of operations and under the plaintiff's supervision.  In March 2006, Jay Hardman, the Executive Director of the Port,[3] transferred the supervision of the Maintenance Department to himself, and then in June 2006 he moved the Maintenance Department back to the Department of Engineering. As a result of the second transfer the plaintiff became the only employee in the Department of Operations.[4]

On August 9, 2006 Hardman wrote a letter to Anne Soileau, the Director of the Louisiana State Department of Civil Service, seeking approval to abolish the position held by the plaintiff, with an effective date of August 24, 2006.  Hardman stated in the letter that "[t]he layoff is being proposed to adjust to a change in workload, leading to less than full-time work within the Operations Department."[5]  Hardman did not discuss the layoff plan with the Port Commission before writing the letter to Soileau.[6]  On August 11, 2006, without any prior notice that his position might

---

[3] Hardman was promoted to Executive Director of the Port in July 2005.

[4] Defendant Exhibit 5, October 6, 2006 Decision of Louisiana Civil Service Commission.  Hardman was promoted to Executive Director of the port in July 2005.  *Id.*

[5] Defendant Exhibit 4.

[6] Plaintiff Exhibit 5, Hardman depo., pp. 49-50; Defendant Exhibit 5.

be abolished, the plaintiff was informed by Hardman of the proposed elimination of his position and on the same day Hardman placed the plaintiff on forced annual leave.[7]

Plaintiff appealed this adverse employment action to the Louisiana Civil Service Commission. After conducting an evidentiary hearing, the Commission reversed Hardman's decision and ordered the plaintiff returned to duty  and credited with the leave he was forced to take.  The Commission found that the actions taken against the plaintiff were improper, unreasonable and a violation of Civil Service rules.[8]  While the plaintiff's appeal of his layoff was pending two other relevant events occurred.  Plaintiff filed a charge of race discrimination with the EEOC on September 11, 2006,and on October 5, 2006 the plaintiff was issued an unsatisfactory job performance rating by Hardman.  Hardman also recommended that the plaintiff not receive his merit pay increase. Plaintiff appealed this negative evaluation and Hardman's rating was reversed by Al Starns, who gave the plaintiff a satisfactory job performance score and reinstated the plaintiff's merit pay increase.  In November 2006 the plaintiff filed another charge of discrimination with the EEOC and alleged retaliation and race

---

[7] Defendant Exhibit 5.

[8] The Commission stated that the "proposed layoff involves lack of proper notice to Mr. LeBlanc, lack of an accurate reason for the layoff, and lack of appointing authority involvement. As such it must be reversed." *Id.*, p. 7.

discrimination.

After the plaintiff returned to duty, Civil Service began the process of evaluating and properly allocating the plaintiff's duties and position at the Port.   In October and February 2007, Robert Boland, Jr., general counsel for the Louisiana Department of Civil Service sent letters to Hardman, the plaintiff and others who advised the Port in employment matters.   Boland requested the completion of Standard Form (SF-3) and explained the process for making a determination of the plaintiff's job duties.   He stated that if Hardman disagreed with the plaintiff's description in the SF-3, he should not sign the form but forward it to Boland with an explanation of what he believed to be the correct facts about the plaintiff's job.   In the case of disagreement the Civil Service Department would conduct a desk audit to resolve the issue. Plaintiff completed the SF-3 but when Hardman received it he never forwarded it to Boland.

On March 6, 2007 Boland issued a letter stating that the Department had concluded that the operations duties being performed by the plaintiff at that time were properly allocated as an Administrative Coordinator 3.   The Department declared a new, vacant position at the Port with this title.   Boland then listed the four options that the Port could take with regard to the plaintiff's employment. All of the options except one would result in the plaintiff being able to continue his employment at the Port

4

either in the position of Port Operations Director or Administrative Coordinator 3.

At the meeting of the Port Commission held on April 26, 2007, Hardman recommended the only option that would result in the plaintiff's termination - abolishing the Port Operations Director position currently held by the plaintiff and not offering the plaintiff the vacant position of Administrative Coordinator 3. Hardman told the Commission that the operations duties did not warrant the position of Director or the open position of Administrative Coordinator.   The Commission voted to accept the option recommended by Hardman.  Plaintiff again appealed the Port's adverse employment action to the Civil Service Commission.  Soileau wrote a letter to Hardman on May 25, 2007 which stated that the effective date of the elimination of the plaintiff's position and layoff would be June 10, 2007.   Because the plaintiff retired effective June 8, 2007 the Civil Service Commission dismissed his appeal.

Plaintiff filed a complaint against the defendant alleging discrimination in violation of Title VII and 42 U.S.C. § 1981, claiming that he was subjected to adverse employment actions from 2006 until his forced layoff in April 2007, because of his race and in retaliation for filing charges of discrimination with the Equal Employment Opportunity Commission (EEOC).

Defendant now moves for summary judgment as to all claims

5

alleged by the plaintiff.  Defendant argued that summary dismissal
of the plaintiff's race discrimination and retaliation claims is
warranted on the following grounds:

- •  Plaintiff cannot establish that he engaged in any
  protected conduct prior to the transfer of the
  Maintenance Department from his supervision and the
  attempt to eliminate his position in August 2006, or that
  these actions were ultimate adverse employment decisions
  under Title VII.

- •  Plaintiff cannot establish that the low performance
  evaluation he received from Hardman in October 2006 was
  a materially adverse employment action under the
  *Burlington Northern* standard, nor can the plaintiff
  present any evidence to dispute the legitimate,
  nonretaliatory explanation for the evaluation.

- •  Plaintiff cannot establish a prima facie case as to the
  termination of his employment in May/June 2007, because
  he has no evidence that similarly situated persons
  outside his protected class were treated more favorably
  or that he was replaced by persons outside his protected
  class.

- •  Plaintiff has no evidence to dispute the legitimate,
  nondiscriminatory and nonretaliatory reasons for
  abolishing his position and distributing his duties to

6

other employees.

In support of the motion the defendant submitted a statement of uncontested facts[9] and the following evidence:[10] excerpts from the September 12, 2006 hearing before the Louisiana Civil Service Commission,[11] excerpts from the deposition of Jay Hardman,[12] evidence from Roger Richard, Executive Director of the Port in 2002,[13] a copy of the August 9, 2006 letter from Hardman to Soileau submitting the plan to abolish the plaintiff's position as Port Operations Director,[14] a copy of the October 6, 2006 decision of the Louisiana Civil Service Commission disapproving the plaintiff's layoff proposed by Hardman in August 2006,[15] a copy of the October 19, 2006 meeting minutes of the Greater Baton Rouge Port Commission wherein the Commission voted not to appeal the October 2006 decision,[16] a copy of the October 27, 2006 letter from Robert R. Boland, Jr. to

---

[9] Record document number 27-3.

[10] Defendant cited to an Exhibit 3.  However, this exhibit was not attached to the defendant's motion.  Counsel for the defendant did not respond to the court's inquiry regarding the missing exhibit.

[11] Defendant Exhibit 1.

[12] Defendant Exhibit 2. Additional excerpts from Hardman's deposition were also attached to the defendant's reply memorandum.

[13] Defendant Exhibit 3.

[14] Defendant Exhibit 4; Plaintiff Exhibit 4.

[15] Defendant Exhibit 5; Plaintiff Exhibit 3.

[16] Defendant Exhibit 6; Plaintiff Exhibit 10.

Hardman, outlining the process for initiating Standard Form 3 (SF-3) and allocating the plaintiff's job duties,[17] a copy of the March 6, 2007 letter from Boland to Hardman setting forth options for restoring, changing or eliminating the plaintiff's position,[18] a copy of the April 26, 2007 meeting minutes of the Greater Baton Rouge Port Commission wherein the Commission voted to abolish the plaintiff's position as Port Operations Director and declined to offer him the vacant position of Administrative Coordinator 3,[19] a copy of the May 25, 2007 letter from Soileau to Hardman authorizing Hardman's plan to layoff the plaintiff effective June 10, 2007,[20] a copy of the July 25, 2007 decision of the Louisiana Civil Service Commission dismissing as moot the plaintiff's appeal of the elimination of his position and layoff,[21] and excerpts from the depositions of the plaintiff,[22] Kenneth Mark Harrington,[23] Hall

---

[17] Defendant Exhibit 7; Plaintiff Exhibit 11.

[18] Defendant Exhibit 8; Plaintiff Exhibit 13.

[19] Defendant Exhibit 9; Plaintiff Exhibit 14.

[20] Defendant Exhibit 10; Plaintiff Exhibit 15.

[21] Defendant Exhibit 11.  The second page of this decision appears to have been omitted, nevertheless, the fact of the dismissal of the appeal is undisputed.

[22] Defendant Exhibit 12.

[23] Defendant Exhibit 13.  Additional excerpts from Harrington's deposition were also attached to the defendant's reply memorandum.

Davis,[24] Barbara Ferdinand,[25] Joe Delpit,[26] and William Pugh.[27] Attached to the defendant's reply memorandum were additional deposition excerpts from Hardman, Harrington, Ferdinand and Delpit and copies of documents completed or submitted by the plaintiff with regard to his duties and responsibilities as Port Operations Director.

Plaintiff opposed the defendant's arguments and relied on some of the same evidence submitted by the defendant as well as other evidence to show that summary judgment is not appropriate in this case. Plaintiff essentially argued that he has presented sufficient evidence to establish a prima facie case of race discrimination and retaliation, and sufficient evidence to dispute the defendant's legitimate, nondiscriminatory/nonretaliatory reasons for the employment actions taken. Plaintiff submitted the following additional evidence in opposition to the defendant's

---

[24] Defendant Exhibit 14.

[25] Defendant Exhibit 15. Additional excerpts from Ferdinand's deposition were also attached to the defendant's reply memorandum.

[26] Defendant Exhibit 16. Additional excerpts from Delpit's deposition were also attached to the defendant's reply memorandum.

[27] Defendant Exhibit 17.

motion:[28] excerpts of his deposition testimony[29] from the depositions of Raymond Plains,[30] Hardman,[31] Alfred Starns,[32] Delpit,[33] and Ferdinand,[34] a copy of the plaintiff's performance reviews in October 2006, 2004 and 2005,[35] and a copy of the February 12, 2007 letter from Boland to Hardman with a second request for the completion/submission of the SF-3.[36]

## Summary Judgment Standard and Applicable Law

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.  Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).  If the moving party carries its burden under Rule 56(c), the opposing

---

[28] The exhibits submitted by the plaintiff which duplicated the defendant's exhibits were Plaintiff Exhibits 3, 4, 10, 11, 13, 14, and 15.

[29] Plaintiff Exhibit 1.

[30] Plaintiff Exhibit 2.

[31] Plaintiff Exhibit 5.

[32] Plaintiff Exhibit 6.

[33] Plaintiff Exhibit 16.

[34] Plaintiff Exhibit 17.

[35] Plaintiff Exhibits 7, 8 and 9, respectively.

[36] Plaintiff Exhibit 12.

10

party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.  The court may not make credibility findings, weigh the evidence, or resolve factual disputes.  *Id.*; *Reeves v. Sanderson Plumbing Prods., Inc.*,  530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000).  On summary judgment, evidence may only be considered to the extent not based on hearsay or other information excludable at trial.  *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

The applicable substantive law dictates which facts are material. *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001).  In this case the court must apply the law applicable to race discrimination and retaliation claims brought

11

under Title VII and § 1981.

**Race Discrimination Claims under Title VII and § 1981**

The well-established *McDonnell Douglas*[37] framework is applied to consideration of disparate treatment claims brought under Title VII and § 1981.[38]   To establish a prima facie case of race discrimination, the plaintiff must demonstrate that he is:  (1) a member of a protected class; (2) qualified for the position, (3) suffered an adverse employment action, and (4) was replaced by someone outside of the protected class, or that others outside of the protected group and similarly situated were treated more favorably.  *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507 (5th Cir. 2001).  In a case characterized as a reduction-in-force where the plaintiff is not replaced, the plaintiff is not required to present evidence that he was replaced or that others outside of the protected group and similarly situated were given preferential treatment.  *See*, *Baker v. Randstad North America, L.P.*, 151 Fed.Appx. 314 (5th Cir. 2005), *citing*, *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003).

---

[37] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

[38] The analysis of claims for employment discrimination under Title VII and § 1981 are identical, the only substantive differences between the two statutes being their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies.  *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).

Instead, in addition to the other elements, the plaintiff makes out a prima facie case by showing that he was qualified to assume another position at the time of the discharge, and evidence from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *Id.*; *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

The elements of a plaintiff's prima facie case necessarily vary depending on the particular facts of each case, and the nature of the claim. *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996); *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

A plaintiff's prima facie case creates an inference of discrimination that shifts the burden of production to the defendant to come forward with evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. The burden is one of production, not persuasion, and "can involve no credibility assessment." *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106, *citing*, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748 (1993); *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000).

Once the employer articulates a legitimate nondiscriminatory reason and produces competent summary judgment evidence in support of it, the inference created by the prima facie case drops out of

13

the picture. *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000). The *McDonnell Douglas* framework with its presumptions and burdens disappears, and the only remaining issue is discrimination vel non. The fact finder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. *Id.*; *Reeves*, *supra*.

A plaintiff may attempt to establish that he was the victim of intentional discrimination by offering evidence that the employer's legitimate nondiscriminatory reason is unworthy of belief. The trier of fact may also consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn from it, on the issue of whether the defendant's explanation is pretextual. *Reeves*, *supra*; *Russell*, 235 F.3d at 222-23. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves*, 120 S.Ct. at 2108-09; *Russell*, 235 F.3d at 223.

Whether summary judgment is appropriate in any particular case will depend on a number of factors including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence relevant to the employer's motive. *Reeves*, 120 S.Ct. at 2109; *Crawford*, 234 F.3d at 902. The ultimate determination in every

14

case is whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable fact finder could infer discrimination. *Crawford*, *supra*.

As a result of the Supreme Court's decision in *Desert Palace v. Costa*, 539 U.S. 90, 123 S.Ct. 2148 (2003), the Fifth Circuit has developed a modified *McDonnell Douglas* approach under which a plaintiff relying on circumstantial evidence in support of his claim is not limited to demonstrating that the defendant's reason is pretextual, and may alternatively establish that discriminatory animus was a motivating factor in an adverse employment decision. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351-352 (5th Cir. 2005), *citing*, *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004).

The parties' burdens under the modified *McDonnell Douglas* approach are as follows:

> [Plaintiff] must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative).

*Machinchick*, 398 F.3d at 352; *Keelan*, 407 F.3d at 341.

Therefore, in order to withstand summary judgment, using

direct or circumstantial evidence, the plaintiff is required to present sufficient evidence for a reasonable jury to conclude that race was a motivating factor for the defendant's employment action. *Roberson v. Alltel Information Services*, 373 F.3d 647, 652 (5th Cir. 2004).

**Retaliation Under Title VII and § 1981**

A plaintiff establishes a prima facie case for unlawful retaliation under 42 U.S.C. § 2000e-3(a) and § 1981[39] by proving: (1) that he engaged in activity protected by Title VII or § 1981, (2) that an adverse employment action occurred, and (3) that a causal connection exists between the protected activity and the adverse employment action. *Lemaire v. State of Louisiana*, 480 F.3d 383 (5th Cir. 2007); *Foley*, 355 F.3d at 339-340.

An employee has engaged in protected activity if he has (1) opposed any practice made an unlawful employment practice by the statute, or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing. *Grimes*, 102 F.3d at 140. The opposition clause requires the employee to show that he had at least a reasonable belief that the practices he opposed were unlawful. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). However, proof of an actual

---

[39] Section 1981 protects against retaliation for opposition to race discrimination in the workplace. *Foley v. Univ. of Houston System*, 355 F.3d 333, 339 (5th Cir. 2003); *Swanson v. City of Bruce, Miss.*, 105 Fed.Appx. 540, 543 (5th Cir. 2004).

unlawful employment practice is not required to state a claim for unlawful retaliation. *Id.*, at 309, n.10, *citing*, *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137-41 (5th Cir. 1981).

Title VII's retaliation provision is not limited to actions and harms that relate to employment or occur at the workplace. It covers employer actions materially adverse to a reasonable employee, that is, actions that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006). *Burlington* overruled Fifth Circuit precedent which limited actionable Title VII retaliatory conduct to ultimate employment decisions. *Burlington*, 126 S.Ct. at 2410.

The case law does not indicate that the rationale and holding of *Burlington* would not also apply to retaliation claims under § 1981. *Miller v. Wachovia Bank, N.A.*, 541 F.Supp.2d 858, 865-66 (N.D.Tex. 2008). Section 1981 retaliation cases prior to *Burlington* relied on Title VII jurisprudence which required ultimate employment decisions to satisfy the element of adverse employment action. *Foley*, 355 F.3d at 340.

The causal link required by the third prong of the prima facie case does not have to meet a "but for" standard. A plaintiff does not have to prove that his protected activity was the sole factor

17

motivating the employer's challenged actions in order to establish the causal link element of a prima facie case. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). Close timing between an employee's protected activity and an adverse action against the employee may provide the causal connection needed to make out a prima facie case of retaliation. *McCoy v. City of Shreveport*, 492 F.3d 551, 562, n. 28 (5th Cir. 2007); *Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

If the plaintiff establishes a prima facie case of retaliation, the defendant must come forward with a legitimate, nondiscriminatory reason for its adverse employment action. Once the defendant advances its reason, the focus becomes the ultimate issue in a retaliation case, which is whether the employer retaliated against the employee for engaging in protected activity.[40] Plaintiff is required to prove that the adverse employment action would not have occurred "but for" the protected activity. *Vadie v. Mississippi State University*, 218 F.3d 365, 374 (5th Cir. 2000); *Septimus* v. *University of Houston*, 399 F.3d 601, 608-09 (5th Cir. 2005). "Whether or not there were other reasons for the employer's actions, the employee will prevail only by proving that "but for" the protected activity she would not have

---

[40] Once the employer offers a legitimate, nonretaliatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive. *McCoy*, *supra*.

been subjected to the action of which she claims." *Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir. 1984); *Strong v. University Health Care System, L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007). Although not in itself conclusive, the timing of an employer's actions can be a significant factor in the court's analysis of a retaliation claim. *Gee*, 289 F.3d at n.3, *citing*, *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992).

**Relevant Decisionmaker**

Officials with final authority on employment decisions who do not conduct an independent investigation and rubber stamp the recommendation of another decisionmaker, may act as a conduit of that decisionmaker's discriminatory or retaliatory motive. *See*, *Mato v. Baldauf*, 267 F.3d 444, 450 (5th Cir. 2001); *Hitt v. Connell*, 301 F.3d 240 (5th Cir. 2002). If the plaintiff can demonstrate that others had influence or leverage over the official decisionmaker, it is proper to impute their discriminatory or retaliatory attitudes to the formal decisionmaker. *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 226-27 (5th Cir.2000). The degree to which the official decisionmaker's decision was based on his own independent evaluation is a question of fact. *Long v. Eastfield College*, 88 F.3d 300 (5th Cir. 1996); *Rios v. Rossotti*, 252 F.3d 375, 379-80 (5th Cir. 2001).[41]

---

[41] *Gee*, 289 F.3d at 346-47 (summary judgment cannot be granted where plaintiff cites to evidence which creates a genuine dispute
(continued...)

## Analysis

### Prima Facie Case of Race Discrimination

The undisputed evidence shows, and the defendant does not contest, that the plaintiff is a member of a protected class,[42] that he suffered an adverse employment action,[43] and that he was qualified for the position he held which was later abolished. Defendant, however, argued that the plaintiff cannot establish a

------

[41](...continued) for trial on the question of whether others had influence or leverage over the official decisionmaker, and there is evidence that one with influence or leverage had a discriminatory motive).

[42] Plaintiff's allegations state that his race is black or African-American.  Complaint, ¶ I, XXXIV.

[43] The "ultimate employment decision" test for Title VII nonretaliation claims requires that adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.  *McCoy*, 492 F.3d at 559.  Defendant argued that two employment actions underlying the plaintiff's race discrimination claim are not "ultimate employment decisions" within the meaning of Title VII.  Defendant made this argument with regard to Hardman's 2006 transfer of the Maintenance Department from Operations to the Engineering Department, and his August 2006 action to eliminate the plaintiff's job which was reversed by the Louisiana Civil Service Commission.  Plaintiff did not specifically address these arguments, but clearly relied on evidence related to these events to support his claim of race discrimination.

It is unnecessary to decide whether these two employment actions satisfy the definition of an ultimate employment decision.  The record establishes that the actions of Hardman, the Port Commission and Louisiana Department of Civil Service resulted in the May 25, 2007 decision to abolish the job held by the plaintiff and not offer him another position.  This action terminated the plaintiff's employment at the Port Commission.  Defendant does not dispute that this decision was an ultimate, adverse employment action under Title VII.  Therefore, this evidence establishes the third element of the plaintiff's prima facie case.

prima facie case because he has no evidence that individuals outside his protected class replaced him, or were similarly situated and received more favorable treatment.  Defendant also argued that the plaintiff cannot show that he was qualified for another position at the port.

Defendant's arguments are unpersuasive.  In its motion the defendant characterized the circumstances of this case as a reduction-in-force.[44]  It is undisputed that the plaintiff's job as Port Operations Director was eliminated, and that the other divisions of the port did not have functions or duties similar to the Operations division headed by the plaintiff.  In these circumstances the plaintiff is not required to come forward with evidence that similarly situated white employees received more favorable treatment, or that he was replaced by someone outside his protected class.[45]  Plaintiff can demonstrate a prima facie case by showing that he was qualified to assume another position at the time of his discharge, and presenting other evidence that supports a reasonable inference of race discrimination.  Plaintiff has presented such evidence.

The March 6, 2007 letter from Boland to Hardman stated that the Louisiana Department of Civil Service created a vacant position

---

[44] Record document number 27-2, pp. 11, 16.

[45] *Nichols*, *supra*, *citing*, *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991); *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 639 (5th 1985).

at the port called Administrative Coordinator 3 and that this position could be offered to the plaintiff.  Boland's letter also stated that these were the duties being performed by the plaintiff at that time.   Other evidence in the record shows that the plaintiff was satisfactorily performing his job.[46]   These facts clearly support a reasonable inference that at time of the plaintiff's discharge, the plaintiff was qualified for a vacant, available Administrative Coordinator 3 position.

There is also other evidence from which a reasonable factfinder could infer that the defendant intended to discriminate in reaching the decision at issue.  When the plaintiff's job was eliminated and he was not allowed to assume the lower level position of Administrative Coordinator.  Rather, all of the duties the plaintiff performed were distributed to white employees in the other divisions.  One of these individuals, Harrington in the Maintenance Department, had been trained and supervised by the plaintiff when Maintenance was still within the Department of Operations.  Deposition testimony shows that after the plaintiff left, Harrington worked out of the plaintiff's old office for five or more hours a day and performed many of the plaintiff's former job duties.[47]  All of this evidence, when viewed in the light most

---

[46] Defendant Exhibit 8; Defendant Exhibit 9, p. 3; Hardman depo., p. 54; Plaintiff Exhibits 7-9.

[47] Defendant Exhibit 9, p.3; Harrington depo. pp. 61-68; Plains
(continued...)

favorable to the plaintiff, could support a reasonable inference of race discrimination.

### Prima Facie Case of Retaliation

A prima facie case of retaliation is established by evidence which shows that the plaintiff engaged in activity protected by Title VII or § 1981, that an adverse employment action occurred, and that a causal connection exists between these two elements. *Lemaire*, *supra*. Defendant argued that as to the unsatisfactory performance review that Hardman gave the plaintiff in October 2006, the plaintiff cannot demonstrate that it was a materially adverse employment action. As to the termination of the plaintiff's employment in the spring of 2007, the defendant contended that the plaintiff cannot establish a causal connection between any protected conduct and the elimination of the plaintiff's position/ layoff.

Again, the record demonstrates that the defendant's arguments for summary judgment on these grounds must be rejected.

### Protected Activity

The first element of the prima facie case is not in dispute. Plaintiff engaged in protected activity prior to both his negative performance evaluation and the termination of his employment. Plaintiff filed an EEOC charge of discrimination on September 11,

---

[47](...continued)
depo., pp. 17-32.

23

2006 and then filed another EEOC charge alleging race discrimination and retaliation in November 2006.[48]

### Adverse Employment Action

With regard to the prima facie element of an adverse employment action, there is a genuine factual dispute as to whether the circumstances surrounding the negative performance evaluation satisfy the "materially adverse" standard of *Burlington Northern*. Contrary to the defendant's arguments, it is not fatal to the plaintiff's claim that he appealed the negative rating and was successful in getting it changed and he filed another EEOC charge in November.[49]  These undisputed facts are relevant to the inquiry but not dispositive.  Competing inferences can be drawn from some

---

[48] Complaint, ¶ XXXV; Record document number 27-2, pp. 4, 6-7; Record document number 28, p. 8.  Plaintiff alleged that these charges were consolidated and he received a right to sue letter dated July 18, 2007.

[49] The case cited by the defendant, *DeHart v. Baker Hughes Oilfield Operations,* 214 Fed.Appx 437 (5th Cir. 2007), does not demonstrate that the plaintiff has no claim as a matter of law because he filed another EEOC charge in November 2006.  In *DeHart* the court noted two reasons that the written warning was not an adverse employment action.  First, the evidence showed that there were "colorable grounds" for issuing the warning to the plaintiff and a reasonable employee would have understood that the warning was not necessarily indicative of a retaliatory motive.  Second, the plaintiff was not dissuaded from later filing a charge of discrimination.  Thus, in finding the warning did not constitute an adverse employment action, the court did not merely rely on the fact that the plaintiff filed a charge of discrimination several weeks after the written warning.

undisputed facts and other relevant evidence is disputed.[50]  If all
of this evidence is viewed in the light most favorable to the
plaintiff, a reasonable trier of fact could conclude that Hardman
intentionally gave the plaintiff a factually unsupported, low job
performance rating.  Based on this same evidence, a reasonable
trier of fact could disbelieve Hardman's explanation for his
conduct and find, based on an objective standard,[51] that his
deliberate actions might dissuade a reasonable worker from making
or supporting a charge of discrimination.

Clearly, the May 25, 2007 decision to abolish the job held by
the plaintiff and not offer him another position is an adverse
employment action.  This decision terminated the plaintiff's
employment.  Defendant does not dispute that this decision was an
adverse employment action sufficient to establish this prima facie
element of the plaintiff's retaliation claim.

### Causal Connection

On  October  5,  2006,  Hardman  gave  the  plaintiff  the

---

[50] *See*, evidence cited in footnotes 45 and 46; Hardman depo.,
pp. 17, 20, 23, 24 and 54; Starns depo., pp. 54 and 57; Defendant
Exhibit 7 (November 3 and November 6 email between plaintiff and
Hardman).

[51] In *Burlington Northern* the court stated that the standard
is based on a "reasonable employee" because the provision's
standard for judging harm must be objective.  Furthermore, the
standard is phrased in general terms because the significance of
any given act of retaliation will often depend on the particular
circumstances of the case.  *Burlington Northern*, 548 U.S. at 69,
126 S.Ct. at 2415.

unsatisfactory, "needs improvement" review that would have resulted in the loss of the plaintiff's merit pay increase.[52]  This action took place after Hardman had laid off the plaintiff without prior notice and placed him on forced annual leave, plaintiff's appeal of his layoff and claim of race discrimination were pending before the Civil Service Commission, and was only three weeks after the plaintiff filed his first charge of discrimination with the EEOC.[53]  These circumstances and the close timing are sufficient to support a reasonable inference of a causal connection between the protected conduct and the alleged adverse employment action.

Plaintiff's termination in April 2007 was approximately eight months after the plaintiff filed his first EEOC charge and six months after he filed his second race/retaliation charge with the EEOC.  This amount of time in itself may be insufficient to establish a causal connection between the protected activity and the termination.[54]  However, this is not the only evidence in the record from which one could reasonably infer a causal link between these events.  The other evidence already cited in connection with the plaintiff's October 2006 unsatisfactory job performance rating, as well as evidence related to the events leading up to the

---

[52] Plaintiff Exhibit 7.

[53] Defendant Exhibits 4 and 5; Starns depo., pp. 26, 27, 31, 35 and 36.

[54] See, *Stroud v. BMC Software, Inc.*, 2008 WL 2325639 (5th Cir. 2008)(cases cited therein).

plaintiff's termination,[55] combined with the timing is sufficient for a factfinder to reasonably infer a causal connection between the plaintiff's termination and his charges of discrimination and retaliation.

**Legitimate, Nondiscriminatory/Nonretaliatory Reasons**

Defendant stated that its legitimate business reason for terminating the plaintiff's employment was that a reduction in the operations duties at the Port no longer supported the position of Director of Operations, and the plaintiff's duties were easily absorbed by other employees.[56]   Defendant asserted that the plaintiff has no evidence to dispute its proffered reasons or otherwise show that they are a pretext for race discrimination or retaliation.

The summary judgment record demonstrates the opposite conclusion.   Plaintiff has presented evidence sufficient for a trier of fact to reasonably infer that the defendant's asserted reasons are false.   A detailed discussion of all the evidence in the record and the inferences that might be drawn is unnecessary. A few examples are sufficient to show why summary judgment is inappropriate.

---

[55] Plaintiff depo., pp. 101-05; Hardman 55, 64-67; Defendant Exhibits 5, 7-9; Plaintiff Exhibit 12.

[56] Defendant did not cite to any specific evidence, but is apparently relying on Hardman's statements at the April 26, 2007 Port Commission meeting.   Defendant Exhibit 9, p. 3.

Hardman transferred all of the plaintiff's duties and employees to the Department of Engineering, under a white supervisor, Polansky, and then eliminated the plaintiff's position. The Civil Service Commission reversed Hardman's actions, essentially finding that Hardman violated Civil Service rules in making the decision and that his reasons for the decision were not entirely legitimate. The Commission stated: (1) Hardman's reasons for eliminating the plaintiff's job were not entirely accurate, (2) there was no valid reason for Hardman to place the plaintiff on forced annual leave because there was full time work for the plaintiff to do, and (3) Hardman violated Civil Service rules by not notifying the plaintiff prior to the decision and by not involving the appointing authority in the decision.

Hardman testified that the plaintiff was a good employee. Yet while the plaintiff was on forced annual leave, Hardman gave the plaintiff an unsatisfactory evaluation based on duties the plaintiff had not performed for many months. After the plaintiff won the appeal of his August layoff and returned to duty, the evaluation and allocation of the plaintiff's job duties was carried out in a manner contrary to the process and procedure established by the Civil Service Commission. Despite the recommendations and findings of the Civil Service Commission, Hardman continued to pursue and recommend that the plaintiff's job be abolished and the plaintiff not be offered another position. The Port Commission

28

officially voted to accept Hardman's recommendation.  The record contains sufficient evidence for the trier of fact to reasonably infer that the Port Commission did not do an independent investigation, and that Hardman had such influence and leverage over the official decision that his discriminatory or retaliatory motives can be imputed to the official decisionmaker.[57]

Viewing this evidence in the light most favorable to the plaintiff, a reasonable jury could find that Hardman acted contrary to established procedures and that his explanations for his actions are internally inconsistent and inconsistent with other evidence in the record.  Therefore, the jury could reasonably conclude that the legitimate, nondiscriminatory/nonretaliatory reasons proffered by the defendant are false.

It is well-established that a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.[58] As explained above the plaintiff has come forward with such evidence.  Without making any credibility assessments, but drawing all reasonable inferences in the plaintiff's favor, the record demonstrates that there is a genuine dispute for trial on the plaintiff's claims of

---

[57] *See, Mato*, *supra*; *Russell*, *supra*; *Gee*, *supra*.

[58] *Reeves*, 120 S.Ct. at 2108-09; *Russell*, 235 F.3d at 223.

29

race discrimination and retaliation.

## Conclusion

The summary judgment record as a whole contains disputed issues of material facts. Where relevant facts are undisputed they can support competing inferences.[59] The resolution of the factual disputes and inferences to be drawn rest in large part on credibility, and questions of credibility cannot be answered on summary judgment. Defendant's motion fails to demonstrate the absence of a genuine dispute for trial and should be denied.

## Recommendation

It is the recommendation of the magistrate judge that the Motion for Summary Judgment filed by defendant the Greater Baton Rouge Port Commission be denied.

Baton Rouge, Louisiana, September 21, 2009.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[59] Summary judgment is improper if undisputed facts raise conflicting inferences because the choice between conflicting inferences is for the trier of fact. *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 274, n. 15 (5th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152 (1987); *Texas Refrigeration Supply, Inc. v. F.D.I.C.*, 953 F.2d 973, 982 (5th Cir. 1992).